IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MICHAEL DE'SEAN GREGORY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:22-CV-00156-BU |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, JOHN | § | |
| MIDDLETON UNIT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michael De'Sean Gregory, proceeding pro se and *in forma pauperis* (IFP), is suing Defendant Chimdi Akwitti and Defendant Texas Department of Criminal Justice (TDCJ) Middleton Unit for violating his constitutional rights. *See* Dkt. No. 1. Now before the Court is Defendants' Motion to Dismiss Gregory's claims. Dkt. No. 60. For the reasons stated below, the undersigned RECOMMENDS the Court DENY the Motion to Dismiss.

## I.  JURISDICTION

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Gregory brings his claims under 42 U.S.C. § 1983. Venue is proper in the Northern District of Texas, Abilene Division, because Gregory's claims arise from his incarceration at the Middleton Unit in Jones County, Texas. 28 U.S.C. §1391 (b)(2).  The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court

1

Judge James Wesley Hendrix transferred Gregory's case to the undersigned for pretrial management. Dkt. No. 6; 28 U.S.C. § 636(b)(1)(B).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Gregory was an inmate at TDCJ Middleton Unit from September 6, 2022, until on or about November 14, 2022. Dkt. No. 1 at 4. For a majority of these two months, Gregory was housed in the Middleton Unit's gym. *Id*. Gregory was assigned to the gym, as opposed to a cell or a bunk, his prescription medications required he be in heat restricted housing. *Id*. The gym was the only building at the Unit with air conditioning.

Gregory alleges that the gym's conditions violated his constitutional rights in different ways. *See* Dkt. Nos. 1, 25. First, Gregory claims he was not given a mattress and was forced to sleep on the gym floor "with rats." Dkt. No. 25 at 3. Gregory alleges that the rodents were also present in the dining area. *Id*. According to his Complaint, Gregory regularly found rats and other pests in and around his food as well as in the areas where he ate. *Id*.

Gregory also alleges that his gym housing had plumbing and bathroom issues. The gym bathrooms had two toilets and two urinals but there were times where only one or two would be functioning for the 200 inmates assigned to the gym. Dkt. No. 1 at 4. Gregory also claims that the gym did not have hot showers. Dkt. No. 40 at 1. As a result, he had to be escorted from the gym to another building within the Unit. *Id*. at 1-2. This required him to walk outdoors which, according to Gregory, caused him to get sick. *Id*. Gregory also alleges that his gym housing prevented him from using the phone at the Unit but does not elaborate on how this deprivation harmed him. Dkt. No. 25 at 3-4.

Gregory alleges that Warden Akwitti visited the gym, observed these issues firsthand, but did not take any action to remedy these conditions. *Id*. at 1-2. Gregory states that these conditions persisted throughout his time at the Unit. *Id*. at 4. The alleged deficiencies made Gregory ill and caused him to lose weight. *Id*. He further complains that the conditions caused him to suffer from "extreme PTSD," memory loss, "difficulty coping with stress," and that his body is "a lot weaker and built differently." *Id*. at 6.

Because Gregory is a pro se plaintiff who is proceeding IFP and suing government officials, his claims were subject to judicial screening. *See* Dkt. Nos. 1, 5; 28 U.S.C. §§ 1915, 1915A. Upon completion of that screening the Court determined that Gregory had stated a plausible conditions-of-confinement claim against Akwitti. Dkt. No. 57. Further, the Court found that Gregory stated a plausible claim against TDCJ under Title II of the Americans with Disabilities Act (ADA). *Id*. The Court ordered these Defendants to file a responsive pleading and the two complied by filing the present Motion to Dismiss.[1] *Id*.; Dkt. No. 60.

### III.  LEGAL STANDARDS

Dismissal for failure to state a claim under Rule 12(b)(6) "turns on the sufficiency of the 'factual allegations' in the complaint.'" *Smith v. Bank of Am., N.A*., 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events"

---

[1] The Court also ordered that the clerk stay this case until such responses were filed. See Dkt. No. 57 at 3. **Because Defendants have filed a responsive pleading, the clerk is now ordered to lift the present stay.**

they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing FED. R. CIV. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept well-pleaded factual allegations as true, viewing them in the light most favorable to the plaintiff. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "Well-pleaded" means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

Substantive plausibility does not require a plaintiff to plead enough facts to establish the events at issue probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## IV. ANALYSIS

Defendants contend that Gregory's conditions-of-confinement claim should be dismissed because (1) he does not adequately allege the substantive elements of either his Eighth Amendment claim or his ADA claim, (2) he seeks compensative damages despite lacking a physical injury, and (3) Awkitti's conduct is protected under qualified immunity. The undersigned will assess each of these arguments below.

A. <u>Whether Gregory has pled an Eighth Amendment claim.</u>

Defendants first contend that Gregory's pleadings, despite surviving judicial screening, do not state an Eighth Amendment claim. To state an Eighth Amendment claim, a plaintiff must show both an objective and subjective component. First, the plaintiff must allege that a prison official deprived him of the minimal requirements for civilized measure of life's necessities, and that the deprivation exposed him to a substantial risk of injury. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Defendants argue that Gregory has pleaded neither. However, their arguments ignore the procedural history of this case. As a pro se plaintiff proceeding *in forma pauperis*, Gregory's Complaint was subject to the judicial screening procedures under 28 U.S.C. §1915(a), (e). These procedures filtered for the exact deficiencies the Defendants allege here. Given that the Court's review is still limited to the well-pleaded factual allegations, as it was at judicial screening, the Defendant's conclusory challenges to Gregory's pleadings are unpersuasive.[2]

---

[2] Defendants first argue that the conditions alleged do not amount to a constitutional violation. In support of this argument, they note that "the presence of pests does not amount to a constitutional violation." Dkt. No. 60 (citing *Waller La. v. Ward*, 2016 WL 7235832, at *3 (W.D. La. Oct. 19, 2016). However, this argument ignores the other conditions Gregory alleges in his Complaint. *See Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (noting a plaintiff does not need to rely on a single condition to demonstrate an Eighth

5

For these reasons, the undersigned RECOMMENDS the Court DENY Defendants' Motion to Dismiss Gregory's Eighth Amendment claim.

B. <u>Whether Gregory has stated an ADA Claim.</u>

Defendants next argue that Gregory's ADA claim against TDCJ should also be dismissed because Gregory fails to both (1) allege a disability and (2) allege discrimination based on that disability.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To bring a claim under Title II, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by

---

Amendment violation but may show that multiple conditions in the aggregate deprived them of their basic needs). Gregory does not just complain of rats but that, for more than a month, he was forced to sleep on the floor, had limited access to a toilet and was made to take cold showers. Further, Gregory alleges that the pests were more than just present but infested the Unit to the degree that he found rats and rat feces in his food. At this stage of the litigation, the Court cannot be persuaded by the Defendants' attempts to downgrade the conditions Gregory alleges in his complaint.

Second, Defendants argue that Gregory has not pleaded that Akwitti acted with deliberate indifference. In support of this contention, Defendants note that Gregory does not allege that Akwitti was aware of each condition specifically. However, Defendants do not address Gregory's statement that "Warden Akwitti is at the unit quite often and he always says that he knows about the violations and that it is against the law." Dkt. No. 25 at 2. Gregory's reference to "violations" is sufficient to incorporate the ones alleged, particularly given his pro se status. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) ("[Courts] must construe the pleading of pro se litigants liberally[.]"). Further, Gregory's allegations that Akwitti knew of the alleged illegality of the conditions and his failure to remedy them, taken as true, satisfies deliberate indifference at this stage of litigation.

6

reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671—72 (5th Cir. 2004).[3]

In its judicial screening order, the Court addressed both of the issues the Defendants raise here. It first found that Gregory's depression and schizoaffective disorder qualified as a disability under the ADA. Dkt. No. 55 at 14-15. Though recognizing that Gregory's pleadings did not detail these conditions, the undersigned concluded that the applicable regulations supported a disability finding. *See* Dkt. No. 55 at 15 (citing 28 C.F.R. § 35.108(d)(2)(k)). The regulations advise courts that "it should easily be concluded that" impairments such as major depressive disorder and schizophrenia "at a minimum, substantially limit the major activities indicated." 28 C.F.R. § 35.108(d)(2)(k). Defendants do not address these regulations in their Motion, nor do they dispute the undersigned's application. Defendants' second argument is also uncompelling. As noted in its screening order, the Court found that Gregory alleged he was placed in the gym because of his disability. *See* Dkt. No. 55 at 15 ("Gregory has alleged that he was placed inside the gym, and thus exposed to the squalid conditions alleged, due to the fact that he had a heat restriction in place because of medications he takes for his mental health conditions."). Again, Defendants do not mention, let alone challenge, this finding in their Motion to Dismiss.

For these reasons, the undersigned RECOMMENDS the Court DENY Defendants'

---

[3] Further, if a plaintiff is seeking compensatory damages, they must also show that the defendant's discrimination was intentional. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) (citation omitted). As the undersigned noted, Gregory did not plead any allegations to indicate that this discrimination was intentional and thus, his ADA claim is for nominal damages only. *See* Dkt. No. 55 at 15-16.

Motion to Dismiss Gregory's ADA claim.

C. <u>Whether Gregory's alleged injuries entitle him to compensatory relief.</u>

Defendants also argue that Gregory's claim for compensatory relief should be dismissed because he fails to state a physical injury. Under the Prison Litigation Reform Act (PRLA), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility without a prior showing of physical injury." 43 U.S.C. § 1997e.

In their Motion, Defendants argue that Gregory "fails to assert any physical injury beyond generally getting sick and weight loss." Dkt. No. 60 at 7. However, the Court found Gregory's allegations of substantial weight loss was sufficient to satisfy the PLRA physical injury component at this stage of the litigation. Dkt. No. 55 at 11 (citing *Dillard v. Davis*, No. 7:19-CV-00081-M-BP, 2022 WL 3045747, at *28 (N.D. Tex. June 17, 2022), *R&R adopted*, 2022 WL 3042901). Defendants do not provide any legal support to challenge this finding, but rather ignore it all together. Thus, the undersigned RECOMMENDS the Court DENY the Defendants' Motion to Dismiss Gregory's compensatory claims.

D. <u>Whether Akwitti's conduct is protected under qualified immunity.</u>

Akwitti also argues this Court should dismiss Gregory's claims against him on the grounds of qualified immunity.

*i. Legal Standards*

A governmental employee who is sued under § 1983 may assert qualified immunity as an affirmative defense to liability. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from

8

suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In deciding whether a government employee is entitled to qualified immunity, courts conduct a two-pronged inquiry. First, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Akwitti's entire argument for qualified immunity falls under prong one: he is entitled to qualified immunity because Gregory fails to state an Eighth Amendment claim. But the Fifth Circuit Court of Appeals recently reminded courts that the standards for stating a claim at the preliminary screening stage is the same standard for stating a claim at the motion to dismiss stage, *even if the motion to dismiss asserts qualified immunity*. *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (the "assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard.") (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (internal quotation marks omitted).

9

In other words, when a defendant asserts qualified immunity at the motion to dismiss stage, "the district court must 'do not more than determine whether the plaintiff has filed[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Santander*, 133 F.4th at 478 (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (internal quotation marks omitted) (quoting in turn *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

As discussed above, the undersigned finds—now for the second time—that Gregory has alleged sufficient facts which, if true, state a constitutional violation, both for screening and motion to dismiss purposes. Thus, Gregory's claim satisfies the first prong.

    ii.    *Legal Standards Governing the Second Prong of Qualified Immunity*

The Defendants do not brief the second issue. Despite the absence of argument, the Court will address this prong to resolve the issue of qualified immunity "at the earliest possible stage of [the] litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987). Under the second prong, the Court must determine whether Gregory's right was so clearly established that a reasonable officer would have clearly known Akwitti's conduct was unlawful. A constitutional right is clearly established "only if 'the contours of the right were sufficiently clear that a reasonable official would understand that what he was doing violated that right.'" *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018) (brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Ordinarily, a right becomes clearly established when existing precedent has "placed the statutory or constitutional question beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017). A court must ensure that it does not "define clearly established law

at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). So, although the law does not require a case similar in every respect, clearly established law "must be particularized to the facts of the case." *Arzabala v. Weems*, No. 5:21-CV-00268-H, 2024 WL 1018530, at *5 (N.D. Tex. Mar. 8, 2024) (Hendrix, J.) (citing *White v. Pauly*, 580 U.S. 73, 79–80 (2017)). There are, though, rare instances where "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018); *see also Darden*, 880 F.3d at 727.

But even if an official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable under the circumstances. *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

  *iii. Application*

Qualified immunity was aimed to protect the decisions of officers who act in fast-moving, high-pressured, life-or-death situations. *Villarreal v. City of Laredo, Texas*, 134 F.4th 273, 282 (5th Cir. 2025) (Oldham, J., concurring). The "archetypal qualified immunity case" is one of excessive force, where the alleged violation is a product of an officer's split-second decision making. *Id.* (quoting Andrew S. Oldham, *Official Immunity at the Founding*, 46 HARV. J.L. & PUB. POL'Y 105, 107 (2023)) (internal quotations omitted).

That is not the case here. Gregory has plausibly alleged that he was forced to sleep on the floor with rats, share two toilets with approximately 200 other inmates, and required

11

to walk outside to another building for showers, which were cold. Gregory alleges he endured these conditions not for days or even weeks, but for several months. Dkt. No. 25 at 4. This time plausibly afforded Akwitti what a typical qualified immunity defendant does not have: the opportunity to investigate the violations, consult with legal counsel, and make a calculated decision as to how to proceed. *See Villareal*, 134 F.4th at 283. In fact, Gregory alleges Akwitti did just this. Dkt. No. 25 at 4. According to Gregory, Akwitti visited the gym and acknowledged that he knew the conditions were unlawful. *Id*. Yet Akwitti allowed them to persist unabated for months.[4] *Id*.

Any argument that Akwitti was forced to act in the heat of the moment when deciding where to house Gregory is unpersuasive. As discussed above, Gregory's medications required he be placed in heat restricted housing. But neither this medical limitation nor the high temperatures of a Texas summer could have been a surprise to Akwitti. Rather, based on Gregory's allegations, it plausibly appears that Akwitti had ample time to anticipate and plan for proper housing, or, at minimum, evaluate the legal consequences of housing 200 inmates on the floor of a single gym with limited toilet facilities.

This distinction is not insignificant, and courts have questioned as to how, if at all, qualified immunity applies in these situations. *See generally Villareal*, 134 F.4th at 282-84. In the context of conditions of confinement claims, courts particularly emphasize the

---

[4] At the motion to dismiss stage, the Court must accept all well-pleaded allegations as true. Thus, the Court must accept Gregory's claim that Akwitti took no action to address the conditions. Of course, the Court may consider evidence to the contrary later in the litigation.

duration of the conditions. In part, this is to determine whether the inmate endured the condition for such a period that it amounted to a deprivation of a basic human need. The United States Supreme Court acknowledged this principle, noting that "[a] filthy overcrowded cell...might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). Courts have found that a longer amount of time also provides defendants with the opportunity to realize the constitutional implications of their actions, particularly in the context of qualified immunity. *See generally Villareal*, 134 F.4th at 283 (citing *Taylor v. Riojas*, 592 U.S. 7, 141 S.Ct. 52, 208 L.Ed. 164 (2020) (per curiam).

With this background, the undersigned will analyze whether Gregory has plausibly alleged a clear constitutional right. Gregory alleges that his Eighth Amendment right clearly shielded him from months of sleeping on a gym floor among rats, sharing two toilets with approximately 200 other inmates, and having access to only cold showers. Courts have found conditions similar in type rise to a constitutional violation.

For example, in *Taylor* the United States Supreme Court the United States Supreme Court denied qualified immunity to state actors who allowed unconstitutional conditions of confinement to persist. 592 U.S. at 7. The inmate in *Taylor* was placed in a cell for nearly a week that was "covered, nearly floor to ceiling in massive amounts of feces" then moved to a cell which "was equipped only with a clogged drain in the floor to dispose of bodily waste." *Taylor*, 592 U.S. at 7. Due to the lack of a toilet, the inmate was forced to hold his bladder for over twenty-four hours. *Id*. He eventually involuntarily relieved himself, "causing the drain to overflow and raw sewage to spill across the floor." *Id*. Further, the

13

inmate then was forced to sleep on the floor, naked in the sewage because he was not provided a bunk or clothing. *Id*. Due to the egregiousness of these conditions, the Court found that the officers did not need prior legal precedent to give them fair warning that such acts were unconstitutional. *Id*. The Court highlighted there was no evidence that the conditions were created by necessity or exigency. *Id*. at 9.

In *Palmer v. Johnson*, the Fifth Circuit similarly denied defendants qualified immunity regarding allegations of unconstitutional conditions. 193 F.3d 346, 354 (5th Cir. 1999). In *Palmer*, the court found that no reasonable prison official would find it objectively reasonable to contain forty-nine inmates in an outdoor area approximately twenty by thirty feet, overnight without any protection from the wind and cold nor without any "sanitary means of disposing of their bodily waste[.]" *Id*.; *see also Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983) (finding an inmate's allegations that he was intentionally subjected to "a cold, rainy, roach-infested facility and [provided] inoperative, scum-encrusted washings and toilet facilities" stated a claim under the Eighth Amendment).

Though similar in nature, Gregory's alleged conditions differ from these cases in degree. Nowhere in Gregory's pleadings does he allege overcrowding on a level with *Palmer*, or that he was forced to resort to unsanitary means as in *Taylor*. *Palmer*, 193 F.3d at 354 (noting a complete deprivation of toilets, as opposed to restricted access, amounted to a constitutional violation). Nor can the undersigned find any other legal precedent which specifically states that providing only two toilets for two hundred inmates would create an unconstitutional condition. Gregory also claims he was subjected to rats, both on the gym

14

floor and in the chow halls. But as Defendants note, "the mere presence of pests does not amount to a constitutional violation." *Waller La. v. Ward*, 2016 WL 7235832, at *3 (W.D. La. Oct. 19, 2016).

However, courts may consider otherwise constitutional conditions of confinement in combination when together they "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Thus, the undersigned will consider Gregory's lack of bedding in combination with the rodent infestation as together they deprived him of his ability to sleep. However, again, the undersigned cannot find case law which establishes a clear constitutional right to be free from such conditions.

Divorcing the two conditions also does not reveal case law indicating a clear constitutional right. The Fifth Circuit has not firmly stated that an inmate has a constitutional right to a mattress.[5] *See Davis v. Gusman*, No. CIVA 09-7195, 2010 WL 1727825, at *22-23 (E.D. La. Apr. 13, 2010), *report and recommendation adopted*, No. CIVA 09-7195, 2010 WL 1727821 (E.D. La. Apr. 28, 2010) (finding no constitutional violation where the plaintiff slept on the floor without a mattress for five days). Thus, temporary bedding deprivations, without more, do not constitute a constitutional violation. *Phillips v. East*, 81 Fed. Appx. 483, 2003 WL 22770162, at * 2 (5th Cir. 2003) (finding that

---

[5] Some legal precedent suggests that proper bedding does constitute a basic human need. *See Oladipupo v. Austin*, 104 F. Supp. 2d 626, 639 (W.D. La. 2000). However, courts have noted that those cases do not apply the current deliberate indifference standard and, on this basis, refused to extend the holding to claims brought by convicted inmates. *See Davis*, 2010 WL 1727825, at *22-23; *Magee v. Crowe*, No. CIV.A 09-3142, 2010 WL 630011, at *10 (E.D. La. Feb. 19, 2010).

denial of a mattress for two and half days did not amount to an Eighth Amendment violation); *Magee v. Crowe*, No. CIV.A 09-3142, 2010 WL 630011, at *10 (E.D. La. Feb. 19, 2010) (ten days); *McClay v. Gusman*, Civ. Action No. 11-2863, 2012 WL 3438367, at *8 (E.D. La. July 13, 2012)(seventeen days); *Allen v. St. Tammany Par.*, No. CV 17-4091, 2018 WL 558503 (E.D. La. Jan. 2, 2018), *report and recommendation adopted*, No. CV 17-4091, 2018 WL 537495 (E.D. La. Jan. 24, 2018) (fifteen days).

Though there appears to be no case involving identical facts, courts dealing with similar conditions have highlighted certain factors relevant to the constitutional determination. For example, in *Alexander v. Tippah County, Mississippi*, the Fifth Circuit noted that the presence of an injury and the length of confinement are crucial factors when determining whether the confinement meets constitutional standards. 351 F.3d 626, 631 (5th Cir. 2003). The court in *Desroche v. Strain* applied those factors to conditions like those here. Desroche spent 10 days in a cell with twenty to forty other inmates who were forced to share one toilet and sleep on the concrete floor. 507 F.Supp.2d 571, 575 (E.D. La. 2007). This was found to not be a constitutional violation because the conditions were temporary in nature and did not cause substantial harm.

*Alexander v. S. Health Partners, Inc.*, a case from this district, similarly held that the pre-trial detainee was not deprived of life's necessities when he was housed without bedding or a toilet for five days. No. 3:22-CV-0395-X, 2024 WL 3240652, at *4 (N.D. Tex. June 28, 2024), *aff'd sub nom. Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.*, No.


24-10663, 2025 WL 1904112 (5th Cir. July 10, 2025). In support of its holding, the court cited to out-of-circuit cases involving conditions of temporary duration.[6]

As discussed above, the length of duration is often critical in assessing qualified immunity in conditions of confinement cases for two reasons: (1) it increases the likelihood that the inmate was deprived of a necessity and (2) it provides the officer the opportunity to appreciate and respond to the legal implications of their actions. In other words, the unlawfulness of the conditions should have become increasingly obvious to the officer as time passed. Still, there is no case law affirmatively establishing a length-of-duration litmus test for questionable conditions of confinement. But caselaw is clear that there comes a point when a combination of unpleasant conditions, when further combined with their duration, give rise to a situation so intolerable that, even in the absence of case law, any reasonable warden would have known the conditions were unlawful. Hence, it would have been objectively unreasonable for the warden to fail to remedy them.

Ultimately, courts determine whether a constitutional right was clearly established within the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

---

[6] *Alexander* cited to *Chapman v. Proctor*, where the plaintiff claimed he endured allegedly unconstitutional conditions for sixteen days. No. 2:20-CV-0091, 2022 WL 822466, at *1 (S.D. Ga. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 501390 (S.D. Ga. Feb. 18, 2022); *see also Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (finding no constitutional violation where plaintiff went eighteen days without a functioning toilet); *Anderson v. Chapman*, No. 3:12-CV-0088, 2013 WL 4495827 (M.D. Ga. 2013) (granting summary judgment where inmate spent five days sleeping on the floor alongside dried urine, feces, and blood because there was no evidence it posed a substantial risk to inmate's health) *aff'd*, 604 F.App'x 810, 814 (11th Cir. 2015).

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Gregory alleges that he was forced to sleep on the gym floor without a mattress, where rats were common, and forced to share a one or two toilets with 200 other inmates for months without knowing when or if the conditions would cease.[7]

Accepting Gregory's allegations as true at this juncture, the undersigned finds it plausible that these conditions, lasting for almost two months, plausibly combined to have the "mutually enforcing effect" of violating Gregory's Eighth Amendment rights. *Wilson,* 501 U.S. at 304. Further, the undersigned finds it plausible that any reasonable officer in Akwitti's position would have clearly known these conditions, permitted over this duration, were unlawful. At the time Gregory's claims arose, it may have been unclear that Gregory had a constitutional right to not be subjected to the alleged conditions, singularly or in combination. The duration at which such conditions trip the constitutional wire may have also been unknown. But the undersigned finds it plausible that the line for Akwitti to be compelled to act at the risk of violating Greogory's rights was well short of two months.

## V. CONCLUSION

For the reasons above, the undersigned RECOMMENDS that Gregory's claims

---

[7] The undersigned recognizes that these conditions do not rise to the level of deplorability in previous cases where the court denied qualified immunity. Though the conditions here may not have been as egregious as those in *Taylor*, Gregory was forced to endure them for a significantly longer period of time. As discussed above, it has been suggested that the need for granularity in connection with the "clearly established" prong of qualified immunity may be more leniently applied in cases where "the correctional officers had plenty of time to assess their horrific conduct and recognize that it obviously violated the law." *Villarreal,* 134 F.4th at 282 (Oldham, J., concurring). Thus, "it [is] of no moment that precedent had only clearly established a general prohibition on 'inhumane' conditions of confinement." *Id.* (citing *Farmer,* 511 U.S. 832).

survive the assertion of qualified immunity, at least at the pleading stage, and that the Court DENY Defendant's Motion to Dismiss.

## VI.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX.  TRANSFER OF CASE

The undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:22-CV-00156-H.

ORDERED this 12th day of August 2025.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE